**COMMERCIAL STANDARD INS. CO. v. FIDELITY UNION INS. CO.**

No. 13643.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 17, 1937.

Rehearing Denied Jan. 14, 1938.

Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

W. J. Rutledge, Jr., of Dallas, for appellee.

BROWN, Justice.

Certain fire insurance companies, including the appellee, in September, 1924, entered into what seems to be known among insurance companies as a "pool," the contract being in writing, and the intent and purpose of which was "to provide automatic and reciprocal reinsurance between and among the subscribing Companies against their severally incurred liabilities under all policies issued to cover cotton in bales under floater reporting forms, or so called 'Buyer's transit,' 'Spark Hazard,' and 'legal liability' forms and any and all other forms except forms covering only cotton at specific locations, or cotton insured under limited floater forms for specific amounts; and, second, to provide for the taking of reinsurance in definite and fixed proportions by the several subscribing Companies of the excess liability of any one subscribing Company that may desire to cede its liability in excess of any given amount under policies covering cotton in bales at specific locations, or under limited floater forms for specific amounts; and, third, to provide automatic and reciprocal reinsurance of any undertaking of reinsurance by any one subscribing Company of the liability of any Company or association not subscribing hereto on any risk on baled cotton."

The apportionment made in this contract between the ten subscribing companies "for automatic and reciprocal reinsurance" provided for in the contract shows that appellee's portion is 20 per cent.

Section 7 of the contract stipulates: "The manager of the Southern Cotton Underwriters (that being the name adopted in the contract between these Companies) shall procure for the benefit of the subscribing Companies reinsurance in such amount as he may determine of the excess of the ag-

gregate liabilities under policies issued by the subscribing Companies under this agreement, such reinsurance to cover at least 95% of the excess over One Hundred Thousand ($100,000) Dollars on all classes of risks except 'AA' Classifications."

Section 18 of the agreement is: "This agreement shall continue in effect until terminated by mutual consent of the subscribing Companies, but any subscribing Company may withdraw and cease to be obligated hereby on first day of September of any year by giving 90 days notice in advance to the Manager of the Southern Cotton Underwriters. Upon the receipt of such notice the Manager shall notify the other subscribing Companies and the Companies remaining parties to this agreement shall immediately arrange to make up the liability represented by the Company withdrawing by reapportioning the liability among themselves or by securing another company to subscribe to this agreement."

On September 1, 1925, appellant made the following contract with appellee:

"The Commercial Standard Insurance Company of Dallas, Texas, hereby agrees to reinsure September 1, 1925, 5% of the liability assumed by the Southern Cotton Underwriters as set forth in copy of the contract between the members of the Southern Cotton Underwriters hereto attached and made part hereof; or, in other words, the Fidelity Union Fire Insurance Company under the terms of its contract with other members of the Southern Cotton Underwriters assumes 20% of the liability of the Southern Cotton Underwriters and it is the purpose of the Commercial Standard Insurance Company to reinsure the Fidelity Union for one-fourth of its liability, which is the same as 5% of the total liability of the Syndicate.

"This reinsurance is made subject to all the terms and conditions that are stipulated in the contract between the member companies of the Southern Cotton Underwriters and the Commercial Standard hereby agrees to assume all the rights, privileges, or liabilities of the Fidelity Union as provided for in said contract, subject to a gross liability of 5% of the total liability of all Companies."

Appellant was at no time a party to the agreement entered into by the twelve companies, which thus formed what is called in its contract with appellee, "the Syndicate," viz.: Southern Cotton Underwriters.

Fidelity Union Insurance Company, appellee, brought suit in the district court of Dallas county against appellant, and alleged the making of the syndicate agreement with the other companies, naming them; and alleged the making of the contract, above quoted, by appellant; and attached copies of these contracts to its petition as exhibits; and then pleaded: "Your petitioner further avers that in effecting settlement of the liabilities incurred by said Southern Cotton Underwriters, as a result of the loss and damage sustained in the Harlingen fire loss of July 31, 1926, above referred to (reference being made to the following allegations: "and pursuant to such reinsurance contract your petitioner became liable upon a loss, identified as the Harlingen fire loss of July 31, 1926, for loss and damage suffered under said contract by Southern Cotton Underwriters") payment was made by the said Southern Cotton Underwriters, and settlement and payments subsequently made by your petitioner for the liability originally incurred by it under such contracts for the total sum of $2659.69. That as such payments and settlements of liability were made by your petitioner for such original liability, statements were made by your petitioner to the said defendant company covering its liability under its contract of September 1, 1925. That such statements, known as bordereaus, were from time to time paid by Commercial Standard Insurance Company, save and except the bordereaus aggregating the sum of $2659.69, copies of which are attached hereto and marked 'Exhibits B, C, D and E' which are here referred to and made a part hereof by reference, the same as if fully incorporated herein. But that although demand has been made upon the said defendant company for payment of the said sum of $2659.69 evidenced by such unpaid bordereaus, the said defendant company has failed and refused to make payment of such amount, to your petitioner's damage in the sum of, towit, $3000.00."

Prayer is for "judgment for the amount of its debt, with interest and costs, etc."

The case was withdrawn from the jury and submitted to the court, and the judgment of the trial court reads, in part, as follows:

"And it appearing to the court upon consideration of the pleadings and the evidence and after hearing the argument of counsel, that the plaintiff is entitled to recover from the defendant five per cent of the total li-

ability incurred by Southern Cotton Underwriters, under the principal contract involved herein, after allowing for excess insurance procured by them, and less the credits for payments heretofore made by said defendant thereunder; and that Southern Cotton Underwriters, under such principal contract incurred a total liability of $203,869.82 against which there was effective excess insurance in the sum of $60,-000.00; and that Commercial Standard Insurance Company has paid heretofore upon its liability to Fidelity Union Insurance Company the sum of $5,027.78, and that the balance due from Commercial Standard Insurance Company to the Fidelity Union Insurance Company is the sum of $2165.71, for which amount plaintiff is entitled to judgment with six per cent interest from January 1, 1934.

"It is accordingly ordered, adjudged and decreed that plaintiff, Fidelity Union Insurance Company, a corporation, do have and recover of and from Commercial Standard Insurance Company, a corporation, the sum of $2535.69, together with interest thereon from this date until paid at the rate of six per cent per annum, and all costs incurred herein for which execution may issue."

Exception to such judgment was taken by said defendant below, and notice of appeal given to the Court of Civil Appeals for the Dallas District, and the cause was from such court transferred by the Supreme Court to this court for review.

While the petition may survive an attack by a general demurrer, it seems clear to us that the judgment rendered by the trial court is not supported by the allegations on which recovery is predicated.

The substance of the plain and understandable allegations of the petition are: That this appellant made a written contract with appellee to insure it against loss to the extent of one-fourth of its liability that may arise under another contract made by appellee, with a number of other insurance companies, concerning certain insurance risks; and then the petition plainly states that the plaintiff, because of a certain loss, made payments "for the liability originally incurred by it under such contracts (being that made with the several insurance companies forming the Syndicate, or Pool) for the total sum of $2659.69"; then follow the allegations of demand being made upon the appellant to pay $2,659.69, and prayer for the recovery of such amount.

We hold that all of the allegations to the effect that appellant owes appellee $2,659.69 are insufficient to support the judgment rendered in the sum of $2,165.71, with interest, when under the plain terms of appellee's petition it alleges and shows appellant liable only for one-fourth of its total liability, and then alleges its total liability to have been $2,659.69.

Furthermore, in the petition is found the further allegation that statements were sent to appellant from time to time which were paid by it (the amounts not being shown), but that the statements, made exhibits to the petition, were not paid by appellant.

We hold that the allegations of the petition before us are insufficient to support the judgment rendered.

And it appears that there are material variances between the allegations of the petition and the evidence.

We sustain the first and fourth assignments of error.

In the light of the record before us, because the pleadings are not as full, definite, and clear as we consider they should be, we pretermit passing upon the second and third assignments of error.

Appellee admits in its brief that it has found no case, clearly in point, to support its contentions, and such of the few authorities, to which we have access, as are cited in appellant's brief, are not so persuasive as that we believe they support the contentions made by appellant.

This case is a "maverick," so far as this court is concerned.

Believing that the cause should be remanded for another trial, we here call attention to certain matters appearing in the record.

Appellant contracted for the reinsurance of appellee's liability which should arise under a definite contract, for reinsurance among themselves, alleged to have been made by certain ten insurance companies named in the contract, and made a part of the contract here sued upon, and named in the petition, and yet it appears from the evidence that one of such named insurance companies never executed the syndicate, or pool, agreement.

Unless it can be shown by appellee that appellant knew of this omission and contracted with it with knowledge of the fact that such insurance company was not a party to the reinsurance agreement, it would seem to us that appellant's position is analogous to that of a surety who signs under the representation made and the belief that a certain other person or persons would be, or were, cosureties with him.

This appears right and equitable, in view of the fact that the syndicate contract provides for the withdrawal of any one of the parties at a certain time, after notice provided for, and for the reapportioning of the liability of the remaining members, or the procuring of another subscriber.

We do not believe that the reinsurance contract made between appellant and appellee has the effect of making appellant a member of the syndicate, or pool.

The very wording of the contract discloses that appellant reinsured appellee to the extent of one-fourth of its liability under the syndicate contract, and that liability is definitely fixed at "20% of the liability of the Southern Cotton Underwriters," the syndicate in question.

In our opinion, under its reinsurance contract, appellant could only be held for one-fourth of the legal liability of appellee (under the syndicate contract) when such legal liability is shown, computed on the basis of 20 per cent. of the legal liability of the syndicate.

This, to our way of thinking, excluded any lossses assumed by the members of the syndicate by reason of the insolvency, or failure of any subscribing member.

The syndicate contract does not provide for the reapportionment of liability among the subscribers, by reason of insolvency, or failure of a member, but only in the event of an actual withdrawal by the member.

The fact that appellee and other subscribers felt morally bound to pay their pro rata proportions of the loss, which was not paid by one of the subscribers, because of its insolvency, imposed no legal obligation upon appellant to pay one-fourth of such part assumed by appellee.

For the reasons given, the judgment of the trial court is reversed, and the cause is remanded for a new trial.