## COMMERCIAL STANDARD INS. CO. v. FIDELITY UNION INS. CO.

### No. 13111.

Court of Civil Appeals of Texas. Dallas. Dec. 12, 1941.

Rehearing Denied Jan. 9, 1942.

Touchstone, Wight, Gormley & Touchstone, of Dallas, for appellant.

W. J. Rutledge, Jr., of Dallas, for appellee.

BOND, Chief Justice.

The historical facts of this case are revealed in the report of a prior decision by the Fort Worth Court of Civil Appeals. A recital here would serve no useful purpose, therefore, we merely refer to the decision wherein the history is related: Commercial Standard Ins. Co. v. Fidelity Union Ins. Co., Tex.Civ.App., 111 S.W.2d 1167. It will be observed that the suit is based upon a contract of insurance. The interpretation of the contract by the trial court, as revealed in its judgment, forms the basis for the principal question involved in this appeal.

The trial court interpreted the contract, in effect, that appellant, Commercial Standard Insurance Company, insured appellee, Fidelity Union Insurance Company, to the extent of one-fourth of all losses which it might sustain by fire, under a contract, or articles of agreement, then existing among nine or ten fire insurance companies, designated as a syndicate or pool, which are subscribed as Southern Cotton Underwriters. The articles of agreement show that the object and purpose of the syndicate was to provide automatic and reciprocal reinsurance among the subscribing companies against their severally incurred liabilities on certain designated kinds of insurable risks, and to provide for a definite and fixed proportion of liability by the several subscribing companies. This contract, or articles of agreement, further shows that appellee, as a subscriber to the agreement, was apportioned twenty (20%) per cent of all such reinsurance and losses which might be sustained by the Southern Cotton Underwriters.

The evidence is undisputed that the Southern Cotton Underwriters sustained a fire and expense loss on risks covered by the terms of the agreement, in the sum of $203,869.82; and that the Commercial Standard Insurance Company has paid on its liability to the Fidelity Union Insurance Company the sum of $5,027.78. Appellee contends that under the terms of its contract, the Commercial Standard Insurance Company owes a balance of $2,074.12, for which the trial court entered judgment. We do not think the contract bears out appellee's contention.

The Commercial Standard Insurance Company was not a member of the syndicate or pool. It was a separate agency, having a distinct contract with the Fidelity Union Insurance Company, to insure the Fidelity Union's liabilities to the syndicate to the extent of one-fourth of its losses; such insurance was expressly made "subject to all the terms and conditions that are stipulated in the contract between the member companies of the Southern Cotton Underwriters." One of these terms and conditions is the gravamen of this suit; it reads:

"Section 7. The manager of the Southern Cotton Underwriters shall procure for the benefit of the subscribing companies reinsurance in such amount as he may determine of the excess of the aggregate liabilities under policies issued by the subscribing companies under this agreement, such reinsurance to cover at least 95%

over the excess of One Hundred Thousand ($100,000) Dollars on all classes of risks, except 'AA' classifications."

It will be observed from the foregoing quoted provision of the contract, that the Southern Cotton Underwriters was obligated to procure reinsurance for "at least 95% of the excess over $100,000 on all classes of risks except 'AA' classifications", and that such obligation was made an express condition precedent to the liability assumed by appellant, Commercial Standard Insurance Company.

The evidence is undisputed that the manager of the syndicate procured $100,000 reinsurance on the excess insurance and had that amount of reinsurance on the date of the contract between appellee, Fidelity Union Insurance Company, and appellant, Commercial Standard Insurance Company; but, prior to the time of the loss in question, $40,000 of such reinsurance had lapsed and the manager of the syndicate was thereafter unable to cover such withdrawals. Manifestly, the obligation of the syndicate to procure at least 95% of the excess above $100,000 of the syndicate's risk (which was made a part of the contract in suit), implied a security for appellant's assumption of one-fourth of appellee's losses, and the lapsing of the $40,000 reinsurance would increase appellant's liability which was not within the contemplation of the parties. In other words, it is not within the purview of appellant's contract to assume any part of appellee's liability to the syndicate for 95% of the excess over $100,000. This excess clearly was excluded from appellant's coverage, and the fact that neither the appellee nor the syndicate was able to obtain the 95% coverage, was of no concern to appellant. Appellant became bound only by the terms of its contract, which excluded the coverage of 95% of the excess over $100,000.

So, considering the contracts and the undisputed evidence, appellant's liability on the $203,869.82 must be calculated thusly: On the $100,000, appellee's liability to the syndicate (20%) is $20,000, of which appellant's liability to appellee (one-fourth) is $5,000; on the excess, $103,869.82, less 95% (or $98,676.33), which is $5,193.45, appellee's liability to the syndicate (20%) is $1,038.69, of which, appellant's liability to appellee (one-fourth) is $259.67; making the total liability of appellant to appellee $5,259.67. The record

shows appellant has paid the sum of $5,027.78, leaving a balance due of $231.89. The court below should have rendered judgment in favor of appellee for the sum of $231.89, with 6% interest from January 1, 1933, until paid, and for all costs of suit. The judgment, therefore, is reformed as above indicated, and as reformed, affirmed. All costs of appeal are taxed against appellee.

Reformed and affirmed.